/UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RICARDO RODRIGUEZ,

         Plaintiff,       10 Civ. 9570 (PKC) (KNF)
  -against-

CITY OF NEW YORK, NYPD OFFICERS     MEMORANDUM
OTIS CASEY, CHRISTIAN DURAN,       AND ORDER
JOHNATHAN WALLY,
WALTER VALENTIN,
LIEUTENANT CRISPIN MUNIZ,
SERGEANT GERARD LONG,

         Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

  This action was tried before a jury in March 2012.  The jury found defendant City of New York vicariously liable for battery committed by unidentified city employees but found no liability on the part of the identified individual defendants on any claims.  Defendant City of New York now moves for judgment as a matter of law or, in the alternative, a new trial.  Plaintiff moves to vacate defendants' award of costs.  For reasons explained, defendant's motion is denied and plaintiff's motion is granted.

BACKGROUND

  The Court discussed the background to this action in an earlier opinion denying plaintiff's motion to amend his complaint to add a conspiracy charge against the above-captioned individual defendants.  Rodriguez v. City of New York, 2012 WL 178032 (S.D.N.Y. Jan. 18, 2012).  Familiarity with that opinion is assumed.  Briefly, in the early morning of September 26, 2009, plaintiff left a bar in the Bronx, began driving home, and hit several parked cars along 181st Street near Fort Washington Avenue in Manhattan.  Plaintiff was then arrested for, among

other things, operating a motor vehicle while intoxicated. Plaintiff alleged that during the arrest, he felt a sharp pain from the application of handcuffs, which caused him to jerk his arm up, which "caused the arm of the arresting officer to be tangled with the plaintiff." (Am. Compl. ¶ 14.) Plaintiff alleged that other responding officers then beat him with their batons and kicked him, even after he was handcuffed and lying on the ground.

Plaintiff filed suit against the identified responding officers, unidentified responding officers, and the City of New York. Plaintiff asserted that the officers had battered him in violation of state law and that the City of New York was vicariously liable for that battery. Plaintiff further asserted that the officers had violated federal law, specifically 42 U.S.C. § 1983, by using excessive force against him and/or failing to intervene in excessive force used by fellow officers.

Defendants were unable to identify all of the officers who had been present at plaintiff's arrest. Specifically, the so-called "SPRINT reports," or radio logs, related to the incident indicated that officers identified by the codes "34SP88" and "IRT SGT" had responded, but defendants could not identify these officers. Defendants asserted that "34SP88" referred to a special post in the 34th Precinct, but that the roll call for the tour in question showed no one assigned to the special post. Defendants further asserted that "IRT SGT" referred to a sergeant of an "Impact Response Team," but that the roll call for the Impact Response Team for the tour in question could not be located.

The case was tried before a jury on March 1-2, 2012. At trial, plaintiff testified that he did not resist arrest, but that during the arrest he "felt a pinch" and then "raised his hands" and "got tangled" with the arresting officer, Police Officer Casey. (Tr. 26:17-27:5.) Thereafter, plaintiff testified, he fell to the ground and the following occurred:

> A: . . . Then I remember a police car coming in.  The guy that stepped out was a person in a white shirt.  Came up to us; didn't say one word.  Took the baton out and just started hitting my head.  And when he started hitting me, I stood up to protect myself.  And at that time there were more police cars coming in at that time.  And when I saw all this, I was protecting me.  I was like, you know just arrest me already, please . . . .
>
> So I somehow managed to get on the floor, was arrested.
> And after I was arrested, they were just hitting me, kicking me, stomping my face to the ground . . . .
> And at the end, a baton hit me right here in the nose, and it hurt immensely.  And that's when I started crying.  And I guess that's when they had sympathy for me and stopped it.

(Tr. 33:2-34:4.)  Plaintiff further testified that about four officers came out of an unmarked car, "in plainclothes, with badges around their neck," and "they just started attacking [him] when they arrived," even though plaintiff was handcuffed on the ground.  (Tr. 37:5-37:20.)

Officer Casey testified that when he first approached plaintiff "[h]e had no injuries on him."  (Tr. 182:18.)  In photos taken shortly after the arrest, plaintiff has injuries to his head:  a black eye and abrasions on the right side of his face (Pl. Ex. 3e); red welts on the top of his head (Pl. Ex. 3d); and severe contusions on the left side of his face (Pl. Ex. 3a).  The contusions are long and linear.  When asked whether "the situation warrant[ed] Mr. Rodriguez to be hit on the head with a baton," Officer Casey responded, "No."  (Tr. 181:20-181:22.)

Plaintiff testified that he could not identify any of the officers who responded after Officer Casey attempted to arrest him, in part because he had his eyes closed and was trying to protect himself, but that there were twelve officers on scene.  (Tr. 79:8-79:10; 95:12-95:16.)  Officer Casey testified similarly that he could not remember which other officers had responded or what actions those officers had taken, because he had been focused on Mr. Rodriguez's back and hands.  (Tr. 179:19-21; 200:22-201:20.)

A SPRINT report, introduced at trial and interpreted by a police communication technician, recorded the responses of multiple units, including "34SP88." (Pl. Ex. 5.) "34SP88" was the first unit to arrive after Officer Casey's request for additional units. (Id.) "34SP88" arrived on scene two minutes before plaintiff was declared "in custody" and remained for about 20 minutes thereafter. (Id.) The technician explained that, according to the report, "34SP88" was the code being used by the officer or officers also identified as "IRT SGT." (Tr. 146:22-146:23.) Lieutenant Muniz, the commanding officer of the relevant tour, testified that IRT stood for "instant response team," and that he did not control the instant response team, which was a "chief of department initiative." (Tr. 235:21-235:25; 238:23-238:25.)

The other responding units were as follows. "34A" was the patrol car of Officer Casey and his partner, Officer Olivera. (Pl Ex. 5; Tr. 241:22.) "34B" was the patrol car of Officers Guiga and Duran. (Pl. Ex. 5; Tr. 241:19.) "34D" was the patrol car of Officers Wally and Valentin. (Pl. Ex. 5; Tr. 241:23.) "34ST2" referred to a sergeant of the 34th Precinct, but the sergeant called at trial, Sergeant Long, testified that he did not know if he had been "34ST2" on that night, that he could not recall responding, and that no visit to Officer Casey was recorded in his memo book. (Tr. 240:16-240:17; 242:3-242:7.) However, Sergeant Long signed off on the arrest report prepared by Officer Casey. (Pl. Ex. 8.) Lieutenant Muniz testified that all of these officers wore blue uniforms. (Tr. 232:3-232:4; 234:10-234:14.)[1]

At the close of plaintiff's case, defendants moved for judgment as a matter of law, pursuant to Rule 50, Fed. R Civ. P. (Tr. 269:1.) The Court took the motion under advisement. (Tr. 269:2-269:3.) Defendants called no witnesses, submitted plaintiff's toxicology report, and

---

[1] "34LT1" was notified, but did not respond to the scene. (Pl. Ex. 5.) Lieutenant Muniz testified that "34LT1" referred to him. (Tr. 232:17-233:2.)

rested.  (Tr. 269:4-271:22.)

    The Court instructed the jury that, in order to prevail on his claim of excessive force under federal law, the plaintiff was required to prove by a preponderance of the evidence that, among other things, a named defendant "intentionally or recklessly deprived" the plaintiff of his right to be free from excessive force.  (Tr. 317:23-317:24.)  The Court further instructed the jury that in order to find an individual defendant liable for failure to intervene in excessive force used by others, the plaintiff was required to prove that the defendant "observed, or had reason to know of, the use of excessive force by another officer," and that the defendant had "a realistic opportunity to intervene to prevent the harm from occurring."  (Tr. 320:8-320:12.)

    With regard to the state-law battery claim, the Court instructed the jury that a police officer committed battery if either (1) the police officer used force against a suspect who was not resisting arrest, or (2) the police officer, confronted with a suspect who was resisting arrest, used more force than the officer reasonably believed was necessary to accomplish the arrest.  (Tr. 322:25-324:11.)  On vicarious liability, the Court instructed the jury that the City of New York was responsible, as employer, for the acts of its employees that were in furtherance of the City's business and within the scope of the employee's authority, even if the City did not authorize the specific act in question.  (Tr. 324:12-325:4.)

    After lengthy deliberations, the jury returned a verdict finding liability only against the City of New York.  The jury concluded that plaintiff had not proven that any identified responding officer had used excessive force or failed to intervene in the use of excessive force by fellow officers.  (See Ct. Ex. 7.)  The jury also concluded that plaintiff had not proven that any identified responding officer had battered plaintiff.  (Id.)  However, the jury responded "YES" to the question, "Did plaintiff prove by a preponderance of the evidence that

some other unidentified employee of the City of New York committed battery against plaintiff and did so within the scope [of] his/her/their employment?" (Id.) The jury concluded that plaintiff had suffered $30,049.07 in compensatory damages as a result of this battery. (Id.) Judgment in that amount was entered against the City of New York on March 9, 2012.

DISCUSSION

I.   Defendant's Rule 50 and 59 Motions are Denied.

Defendant City of New York renews its motion under Rule 50, Fed R. Civ. P., and also moves, in the alternative, for a new trial under Rule 59, Fed. R. Civ. P. Because "Rule 59(a) . . . has a less stringent standard than Rule 50," Manley v. Ambase Corp., 337 F.3d 237, 244 (2d Cir. 2003), and because the Court holds that defendant has not met this standard, the Court denies both motions while addressing only Rule 59.

Rule 59(a) provides that "[t]he court may, on motion, grant a new trial . . . , after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." However, "for a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." Manley, 337 F.3d at 245 (internal quotations and citation omitted).

The jury's conclusion that one or more unidentified city employees battered plaintiff was not against the weight of the evidence. There was ample evidence to support the conclusion that some individual or individuals who responded to the scene used more force than was reasonably necessary to arrest plaintiff. First, plaintiff testified that he never resisted arrest (Tr. 26:17-27:5), in which case no amount of force would have been justified. However, photographs taken after the arrest—before which plaintiff was apparently uninjured—show that

6

he sustained significant head injuries.  (Pl. Exs. 3a-g.)  Second, although Officer Casey testified that plaintiff did resist arrest, Officer Casey also testified that, under the circumstances he observed, it would not have been appropriate to strike plaintiff's head with a baton.  (Tr. 181:20-181:22.)  The most serious injuries to plaintiff's head are consistent with the application of a long, symmetrical object, like a baton.

There was also ample evidence to support the conclusion that the individuals responsible were unidentified NYPD officers.  Evidence at trial showed that the "impact response team" of the NYPD was the first additional unit on the scene, and that plaintiff was declared in custody two minutes after the unit's arrival.  (See Pl. Ex. 5.)  Neither the City of New York nor any officer who was at the incident was able to identify this unit or describe how many officers it comprised, how he/she/they dressed, or what he/she/they did.  Plaintiff testified both that (1) the first person he noticed in addition to Officers Casey and Olivera was a man in a white shirt who emerged from a police car and struck plaintiff on the head with his baton (Tr. 33:2-32:5), and (2) at some point a group of plainclothes officers with badges around their necks arrived and "attacked" him (Tr. 37:5-37:20).  These descriptions do not fit any of the named defendants, all of whom wore blue uniforms.  (See Tr. 232:3-232:4; 234:10-234:14.)  The jury was entitled to conclude that either the white-shirted officer or the group of plainclothes officers was the otherwise unidentified "impact response team" of the NYPD.

Finally, there was ample evidence that these unidentified officers were acting in furtherance of city business and within the scope of their authority.  Again, the evidence supported the conclusion that the unidentified individuals were police officers assigned to the "impact response team."  That unit came over NYPD radio with the code "34SP88," identifying itself as the special post of the 34th Precinct of the NYPD, while responding to a call for

assistance from NYPD officers within the 34th Precinct.  (See Pl. Ex. 5.)  Moments later, the unit arrived at the scene and, crediting plaintiff's testimony, assisted the arresting officers by subduing plaintiff, albeit with unreasonable force.  As the jury was instructed, the City need not have authorized the specific act, to wit, the use of unreasonable force, in order for vicarious liability to attach, as long as the other requirements were met.  Here, the jury was entitled to conclude that unidentified officers battered plaintiff, and that they did so in furtherance of city business and within the scope of their authority, making the City of New York vicariously liable for that battery.

Two of defendant's counter-arguments merit discussion.  First, defendant argues that the jury returned an inconsistent verdict by finding that an unidentified officer or officers committed battery while also finding that no identified officer failed to intervene in the use of excessive force. (Def. Mem. 8-10.)  The jury's findings are consistent.  The Court instructed the jury that failure to intervene requires both awareness that excessive force is being used and a realistic opportunity to intervene.  (Tr. 320:8-320:12.)  The jury could reasonably have concluded that no identified defendant had awareness of the use of excessive force or opportunity to stop it.  Contrary to defendant's argument, the mere fact that Officer Casey was present for the entire incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to prevent it.  Officer Casey's own testimony in this regard is that he was too focused on his own tasks even to recognize which other officers had come to his assistance.  (Tr. 179:19-179:21.)

Second, defendant argues that the unidentified officer or officers cannot have committed battery if, as the jury found, certain identified officers did not commit battery, because the evidence as to both groups was the same.  (Def. Mem. 11.)  Specifically, defendant

contends that the evidence regarding the actions of Officers Duran, Wally, and Valentin, is identical to that regarding the unidentified officer or officers: they responded, and nothing further is known. (Id.) However, the evidence is different in material ways. To state the obvious, the identified officers have been identified. They were located and were named as parties to this action. The unidentified officer or officers, despite being members of the same police force and presumably subject to the same oversight and record-keeping, have never been identified. In fact, Lieutenant Muniz added to this mystery by stating that the unidentified unit was part of an independent "impact response team," and that he, a lieutenant, could not control their actions in his precinct. (Tr. 235:21-235:25; 238:23-238:25.) The jury was entitled to conclude that this unidentified officer or officers committed the battery while the identified officers did not. Moreover, plaintiff testified that prominent among those who battered him were an officer in a white shirt and a group of officers in plainclothes. As noted above, plaintiff could not have been describing Officers Duran, Wally, and Valentin with this testimony, because Officers Duran, Wally, and Valentin were uniformed patrolmen. This distinction further supports the jury's conclusion that the unidentified officer or officers were responsible while Officers Duran, Wally, and Valentin were not.

In sum, the weight of the evidence supports the jury's conclusion that other unidentified officers battered plaintiff while acting in furtherance of City business and within the scope of their authority. Therefore, defendant's motions under both Rule 59 and Rule 50 are denied.

      II.     <u>Defendants' Award of Costs is Vacated.</u>

On March 12, 2012, plaintiff's counsel submitted a bill of costs in the amount of $3,540.67. (ECF No. 51.) On March 23, 2012, the Clerk of the Court awarded plaintiff costs in

the amount of $2,287.67.  (Id.)  On the same day, defendants' counsel submitted a bill of costs in the name of all defendants, requesting reimbursement for costs of $1,413.68.  (ECF No. 54.)  On April 5, 2012, a hearing on costs was held before Judgment Clerk Michael Lee.  On the same day, the Clerk of the Court awarded defendants costs in the amount of $549.70.  (Id.)  This total comprised a $20.00 award for docketing fees and $529.70 for the costs of plaintiff's deposition.  (Id.; Richardson Decl. ¶ 11 & Ex. D, annexed to Pl. Mot. as Ex. A.)   On April 10, 2012, plaintiff moved to vacate defendants' award of costs.  As of the date of this Memorandum and Order, defendants have not filed any opposition to plaintiff's motion.

The Federal Rules provide that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Rule 54(d)(1), Fed. R. Civ. P.  A "prevailing party" under Rule 54(d) is one who achieves a "'judicially sanctioned change in the legal relationship of the parties'" in its favor.  Dattner v. Conagra Foods, 458 F.3d 98, 101 (2d Cir. 2006) (quoting Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 605 (2001) (construing fee-shifting statutes)).  "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)."  Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2667 at 204 (1998).

A party who is only partially successful can still be a prevailing party for the purposes of Rule 54(d).  "Where a plaintiff has brought an action based on several theories of recovery and prevails on only one theory, courts have found that the plaintiff was the prevailing party entitled to costs."  EEOC v. Colgate-Palmolive, 617 F. Supp. 843, 844 (S.D.N.Y. 1985) (citing United States v. Mitchell, 580 F.2d 789, 793 (5th Cir. 1978); Berg v. Wall Street Traders, Inc., 46 F.R.D. 47 (S.D.N.Y. 1968)).  However, in cases involving multiple parties or multiple

distinct claims in which a party prevails on only some of the claims, courts often apportion costs. Wright, et al., supra, § 2667 at 212-17 & n.17. Courts may apportion costs by requiring partially successful parties to bear their own costs, see, e.g., Marx & Co., Inc. v. Diners' Club Inc., 405 F. Supp 1, 4-5 (S.D.N.Y. 1975) (awarding full costs to two defendants who were fully successful, requiring other partially successful parties to bear own costs), or by allowing partial costs to both plaintiff and defendant, see, e.g., Colgate-Palmolive 843 F. Supp at 844 (allowing EEOC to recover one-third of its costs and defendant employer to recover two-thirds of its costs in action in which EEOC sued on behalf of 10 employees but prevailed as to only two of them).

In this case, defendants applied for fees collectively on the theory that they had prevailed within the meaning of Rule 54(d) by prevailing on all federal claims.[2] (Richardson Decl. ¶ 9.) Prevailing on the federal claims did not make the defendants, collectively, the prevailing party. The federal claims and the state-law claims were not distinct claims suitable for independent treatment, e.g., Colgate-Palmolive, 617. F. Supp 843, Marx & Co., 405 F. Supp. 1. Rather, they were two theories of liability for use of excessive force against one plaintiff in one incident. Plaintiff prevailed on one of these theories, making plaintiff the prevailing party entitled to costs without apportionment. See Colgate-Palmolive, 617 F. Supp. at 844; see, e.g., Berg, 46 F.R.D. 48.

No argument has been advanced that the six employees of the NYPD, as distinguished from defendant City of New York, were prevailing parties. No attempt has been

---

[2] Defendants also argued that they were entitled to costs "pursuant to Rule 68 of the FRCP." (Richardson Decl. ¶ 9.) Rule 68(d), Fed. R. Civ. P., authorizes an award of costs to a party that makes pre-trial offer of judgment if "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer." Defendants' offer of judgment was for $5001.00, in satisfaction of any and all claims plaintiff had against defendants. (Richardson Decl. Ex. A. at 1-2.) Judgment at trial was for over $30,000.00. Defendants fail to explain how Rule 68 could apply in such circumstances.

11

made to assign or allocate any expenses to the defense of these individual defendants, as distinguished from the City defendant. Because defendants did not address these issues in their application and have not filed any response to plaintiff's motion to vacate their award of costs, the Court does not pass upon these issues.[3] Instead, defendants' failure to offer a sound theory for the award of costs in their favor is further reason to vacate the award.

## CONCLUSION

For the foregoing reasons, defendant City of New York's motion for judgment as a matter of law or, in the alternative, for a new trial (ECF No. 52) is denied. Plaintiff's motion to vacate defendants' award of costs (ECF No. 55) is granted.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 10, 2012

---

[3] The Court notes, however, that, had defendants attempted to allocate costs to defense of the individual defendants, they would still have faced the difficulty of explaining why the costs that were awarded—for docketing fees and for plaintiff's deposition—should not still be charged to the City of New York, whose defense would have required docketing fees and plaintiff's deposition regardless of the existence of other defendants.

12